IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ROBERT WALLACE, JAMIE JUN, and BYRON BLACK : : : Plaintiffs, : : v. : : : RICK CASE AUTO, INC., a/k/a : RICK CASE AUTOMOTIVE : GROUP, d/b/a RICK CASE CARS, : a/k/a GWINNETT AUDI, a/k/a : GWINNETT AUTO, and : WILL EVANS, : : Defendants. : | CIVIL ACTION NO. 1:12-CV-04271-TWT-JCF |

## **ORDER and FINAL REPORT & RECOMMENDATION**

This case is before the Court on Defendants' Motion to Dismiss and Compel Arbitration. (Doc. 9). As a preliminary matter, Defendants' Motion for Oral Argument, (Doc. 21), is hereby **DENIED**.

### BACKGROUND

Plaintiffs, who worked as salespersons in the car business, (Amended Compl., Doc. 6 at ¶¶ 14, 26, 40), filed this action alleging claims of discrimination, retaliation, and negligent hiring and supervision against Rick Case Cars, Inc., (*id.* at ¶ 7), also known as Rick Case Automotive Group d/b/a Rick Case Cars a/k/a

1

Gwinnett Audi a/k/a Gwinnett Auto (*id.*, caption) and individual Defendant Will Evans.

Defendant Rick Case Cars, Inc. operates several car dealerships in Florida, Georgia and Ohio. (*See* Stokes Decl., Doc. 9-2 at ¶ 2). Plaintiff Black worked as a sales associate at an Atlanta Hyundai dealership, while Plaintiffs Wallace and Jun worked at an Atlanta Audi dealership. (*Id.* at ¶¶ 4, 6 & 8). Defendants contend that Plaintiffs are required to resolve their disputes relating to their employment through arbitration based on having executed employment agreements with arbitration provisions.

## I.     The Wallace and Black Agreements

When beginning work, Plaintiffs Wallace and Black executed documents entitled "Comprehensive Agreement Employment At Will And Arbitration." (*Id.*, Exs. A and C). The agreements provide:

> 1.   It is hereby agreed by and between [Plaintiff] (hereinafter "Employee") and Rick Case Automotive Group ("hereinafter "Company") that the employment and compensation of Employee can be terminated by the Company or the Employee at any time, with or without cause and/or with or without notice, at the option of the Company or the Employee.
> 2.   I also acknowledge that the Company promotes a voluntary system of alternative dispute resolution which involves binding arbitration to resolve all disputes which may arise out of the employment context. . . . I voluntarily agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they be based on this State's Civil Rights Act, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, as well as

2

other state or federal laws or regulations) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company (or its owners, directors, officers, managers, employees, agents, and parties affiliated with its employee benefit and health plans) arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, separation of employment, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise (with the sole exception of claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under Workers' Compensation, Unemployment Compensation claims filed within the state, and charges of discrimination filed and processed before the EEOC) shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of this State's Arbitration Code.

(Doc. 9-2, Exs. A and C).

## II. The Jun Agreement

Plaintiff Jun, on the other hand, executed a different employment agreement providing, in relevant part:

> 1.   It is agreed between Rick Case Automotive Group ("Company") and Jamie H. Jun ("Employee") that the employment and compensation of Employee can be terminated by Company or the Employee at any time with or without cause and with or without notice at the option of Company or the Employee. . . .
>        …
> 4.   It is also acknowledged that the Company promotes a voluntary system of alternative dispute resolutions (sic) which involves binding arbitration and resolves all disputes which may arise out of the employment context.
> 5.   … both the Company and the Employee voluntarily agree that any claimed dispute or controversy including, but not limited to, any claim of discrimination or harassment whether based on Title VII of the State's Civil Rights Act of 1964 or the Age

3

> Discrimination and Employment Act as well as other state and federal law which allow for binding arbitration.
>
> 6. Binding arbitration applies to any claim by the Employee arising from, related to or having any relationship or connection whatsoever with seeking employment, employment by or separation from the Company or other association with the Company whether based in tort, contract, statutory or equitable law. All disputes shall be submitted and determined exclusively through a binding arbitration proceeding under the American Arbitration Association rules in conjunction with any state arbitration statutes. . . .

(Doc. 9-2, Ex. B). Invoking these agreements, Defendants demanded that Plaintiffs dismiss this action and proceed with arbitration, (Doc. 9-3), but Plaintiffs refused and the instant motion followed.

Defendants have filed the motion to compel arbitration and supporting documents. (Doc. 9). Plaintiff responded (Doc. 11), and Defendants replied (Doc. 13). The parties were directed by Order (Doc. 15) to provide supplemental briefing, and each side did so. (*See* Docs. 19 and 20, respectively). With briefing complete, and having concluded that oral argument is not necessary, the undersigned turns to the merits of the motions.

## DISCUSSION

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* was enacted in 1925 "to reverse longstanding judicial hostility toward arbitration." *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). The FAA reflects "a liberal federal policy favoring arbitration agreements." *Hill v. Rent-A-Center, Inc.*, 398 F.3d 1286, 1288 (11th Cir. 2005). One purpose behind the FAA is "to relieve

4

congestion in the courts and to provide parties with an alternative method for dispute resolution that is speedier and less costly than litigation." *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1440 (11th Cir. 1998).

To determine whether to grant a motion to compel arbitration, "the Court must assess whether: '(1) there is a valid written agreement to arbitrate; (2) the issue [sought to be arbitrated] is arbitrable under the agreement; and (3) the party asserting the claims has failed or refused to arbitrate the claims.' " *Lomax v. Woodmen of the World Life Insurance Society*, 228 F. Supp. 2d 1360, 1362 (N.D. Ga. 2002) (citation omitted). The fact that plaintiffs here advance statutory discrimination claims does not change this analysis, as "compulsory arbitration agreements are now common in the workplace, and it is not an unlawful employment practice for an employer to require an employee to arbitrate, rather than litigate, rights under various federal statutes, including employment-discrimination statutes." *Caley*, 428 F.3d at 1367.

### I. Wallace and Black Agreed To Arbitrate Disputes With Their Employer.

Plaintiffs Wallace and Black executed agreements providing as follows:

> I voluntarily agree that any claim … which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company … arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, separation of employment, or other association with the Company, whether based on tort, contract,

statutory, or equitable law, or otherwise … shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of this State's Arbitration Code.

(*See* Doc. 11-1 and Doc. 11-3).

### A. The Eleventh Circuit And Georgia's Appellate Courts Have Invoked Equitable Estoppel To Allow Non-Signatories To Enforce Arbitration Agreements.

Plaintiffs' primary argument is that their employer, Rick Case Cars, Inc., lacks standing to compel arbitration. (Doc. 11 at 3). All the agreements identify "the Company" as "Rick Case Automotive Group." (Docs. 11-1, 11-2, and 11-3). On this note, a careful reading of Plaintiffs' Amended Complaint is in order. Plaintiffs name Rick Case Cars, Inc. as the corporate Defendant. (Doc. 6 at ¶ 7). In the caption, however, Plaintiffs misidentify the corporate Defendant as Rick Case Auto Inc., which, importantly, is also known as Rick Case Automotive Group. (*See* Compl., Doc. 1, and Am. Compl., Doc. 6). Notably, "Rick Case Automotive" accepted service. (*See* Waiver of Service, Doc. 5). The undersigned will presume, for purposes of the present motion, that Rick Case Cars, Inc. is a non-signatory to the agreement. *See Physician Consortium Services, LLC v. Molina Healthcare, Inc.*, 414 Fed. Appx. 240, 241-42 (11th Cir. 2011) (per curiam) (noting confusion over poorly drafted documents and assuming party seeking to compel arbitration was not a signatory to agreement).

So, the precise question here is whether Rick Case Cars, Inc., as a non-signatory to the agreement, can compel Plaintiffs to arbitrate their claims. The Eleventh Circuit has taken "a very broad view of the scope of arbitration." *See Garcia v. Mason Contract Prods., LLC*, 08-23103-CIV, 2010 WL 520805, at *3 (S.D. Fla. Feb. 9, 2010) (quoting *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993)). In particular, the law is well developed concerning whether a signatory to an arbitration agreement can be equitably estopped from avoiding the agreement when asserting claims that are related to or intertwined with the underlying agreement.

In 2009, the Supreme Court made clear that the scope, validity and enforceability of arbitration agreements, including the right of non-signatories to compel arbitration is governed by state contract law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009). Before *Carlisle*, many Eleventh Circuit opinions applied principles of equitable estoppel in the arbitration context without focusing on state law. *See, e.g.*, *MS Dealer Svc. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999). In turn, given the comparably more well-developed state of federal authority on this issue, many state courts, including those in Georgia, frequently found federal law persuasive in determining whether non-signatories could enforce arbitration provisions against signatories. *See Autonation Fin. Servs. Corp. v. Arain*, 265 Ga. App. 755, 759-60 (2003) (RICO claims sufficiently tied to

installment contract to allow arbitration) (physical precedent only).  The parties here have made no effort to show how Georgia law may differ from federal law as applied in this Circuit pre-*Carlisle*, and the undersigned has located no Georgia law that justifies jettisoning the approach consistently followed within this Circuit for a decade and a half.

In fact, Georgia has readily adopted principles first announced by the Eleventh Circuit in *MS Dealer Svcs. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999):

> equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. [Also], application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*Price v. Ernst & Young, LLP*, 274 Ga. App. 172, 175-76, 617 S.E.2d 156, 159-60 (2005) (quoting *MS Dealer Svcs. Corp*, 177 F.3d at 947).  More recently, these same principles have been applied by Georgia courts to require home purchasers who signed a purchase and sale contract with an arbitration provision to arbitrate their claims against non-signatories. *Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 339, 685 S.E.2d 304, 310 (2009) ("The [purchaser's] claims all arise under

and rely upon the Agreement between the [purchasers] Iversons and Order Homes, and the gist of their lawsuit concerns the damage they suffered as a result of the defective construction of their home, which was the subject matter of the Agreement.")

### B. An Employee Has Been Prevented From Avoiding Arbitration With His Employer After Signing An Agreement With A Related Entity.

The principles announced in *MS Dealer Services* and applied by Georgia courts have been applied by a United States District Court under circumstances strikingly similar to the present case to prevent an employee from avoiding arbitration by contending his employment agreement was an agreement with the "wrong" entity. In that case, an installer of draperies and bedding in hotels brought a federal statutory claim against his employer, Mason Contract products. *See Garcia v. Mason Contract Prods., LLC*, 08-23103-CIV, 2010 WL 520805 (S.D. Fla. Feb. 9, 2010). The employee contended he signed an agreement with MRC Industries, which was not his employer. *Id.* at *3. MRC Industries was related to the employer through common ownership and control, but the entities did not have a parent/subsidiary relationship. *Id.* at *2. And, just as Plaintiff does here, the plaintiff in *Garcia* argued that his employer, as non-signatory, had no standing to compel arbitration.

The District Court stated:

9

> Though we are personally sympathetic with [the employee], because we would apply an arbitration agreement quite narrowly and literally if we were operating on a tabula rosa basis, we are constrained to apply arbitrability principles as defined by the Eleventh Circuit Court of Appeals. Our Circuit has on multiple occasions had an opportunity to review cases raising similar arbitrability issues as this one. Inevitably, the result is contrary to [the employee's] position because the Court has taken a very broad view of the scope of arbitration. Indeed, the law of this Circuit today is that the "lack of a written arbitration agreement is not an impediment to arbitration." The Eleventh Circuit's broad view of the scope of arbitration has been recognized as such by other circuits. "[The Eleventh Circuit] has taken the lead in applying equitable estoppel under the intertwined-claims basis."

*Id.* at *4 (internal citation omitted). After setting out the principles from *MS Dealer Services*, the Court noted that "the Eleventh Circuit emphasizes the interrelationship between the parties and claims at issue, and the underlying subject matter of the agreement." *Id.* at *5. Turning to the substance of the plaintiff's claim, the Court readily concluded that even though the claim was statutory and did not directly arise from the agreement with the arbitration provision,

> his claim presumes the existence of an employment relationship. And as he concedes that such a relationship was formed only after he signed the employment agreement, it is clearly not a stretch to find that his claim is related to such an agreement

*Id.* at *5. Thus, *Garcia* is an example of a court using principles of equitable estoppel to prevent an employee from escaping the arbitration provision in his employment agreement by arguing the agreement was not with the entity that actually employed him.

10

### C. The Same Principles Apply Outside The Employment Context To Prevent Parties From Avoiding An Agreement To Arbitrate When Claims And Parties Are Related.

Another recent illustrative example of a signatory being compelled to arbitrate by a non-signatory is *Physician Consortium Services, LLC v. Molina Healthcare, Inc.*, 414 Fed. Appx. 240 (11th Cir. 2011) (per curiam). That case featured a group of Florida sellers of a health care company bringing an action against a guarantor/parent while electing not to sue the buyer/subsidiary. *Id.* at 240 The underlying transaction involved a purchase and sale agreement with an arbitration provision and a guaranty without one. *Id.* at 241. The district court, after "struggling with the task of discerning the meaning of poorly-drafted documents, concluded [the guarantor] was not a party" to the agreement containing the arbitration provision. *Id.*. The Circuit simply assumed the party seeking to compel arbitration was not a party to the agreement with the arbitration clause. *Id.* at 242. Nonetheless, while observing that "[t]he Plaintiffs are attempting an 'end run' to avoid their agreement to arbitrate," the Eleventh Circuit held that the guarantor was entitled to enforce the arbitration provision through principles of equitable estoppel and reversed the District Court. *Id.* at 242.

In so doing, the Eleventh Circuit recognized that "[w]hen the charges against a parent company and its subsidiary are based on the same facts and are inherently

11

inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement." *Id.*

### D. Plaintiffs Cannot Avoid The Arbitration Agreements.

Against this backdrop, Plaintiffs' contention that Rick Case Cars, Inc. lacks standing to assert the arbitration falls short. First of all, as was true in *Garcia*, these employment based claims clearly are "related to" the employment relationship memorialized in the agreement, even if the claims do not allege a breach of that particular agreement. Second, given that Plaintiffs themselves identified Rick Case Cars, Inc. in the body of the complaint and noted in the caption that the defendant was "also known as" Rick Case Automotive Group, it is not surprising that their employer might wish to rely on an employment agreement identifying "Rick Case Automotive Group" as "the Company."

In addition, all the claims presume the existence of an employment relationship, as Plaintiffs can hardly expect to sign an *employment agreement* and then avoid that same agreement *to assert employment discrimination claims*. One court aptly described a similar tactic as a "classic case of a signatory to an agreement resisting arbitration on technical grounds." *Sea Bowld Marine Group, LDC v. Oceanfast Pty, Ltd.*, 432 F. Supp. 2d 1305, 1315 (S.D. Fla. 2006).

Finally, where the presence of "interdependent and concerted misconduct" by signatories and non-signatories can justify estoppel, it is worth emphasizing that

12

Plaintiffs have not only sued an individual Defendant, Mr. Evans, but they have alleged discrimination at various Rick Case Automotive Group locations. *Price v. Ernst & Young, LLP*, 274 Ga. App. 172, 175-76, 617 S.E.2d 156, 159-60 (2005) (quoting *MS Dealer Svcs. Corp.*, 177 F.3d at 947); *see also Spurlock v. Life Ins. Co. of Va.*, CIV.A.98-D-222-N, 2000 WL 1785300 (M.D. Ala. Oct. 31, 2000) (court noted plaintiffs did not differentiate between activities of defendants in concluding that non-signatory defendants had standing to assert applicability of arbitration provision).

In sum, principles of equitable estoppel apply to allow Defendants, the Rick Case entities and Mr. Evans, to enforce the arbitration provision in the arbitration agreements.

**II.     Plaintiff Jun Agreed To Arbitrate Her Employment Claims.**

Defendants point out that Plaintiff Jun's agreement stated that it was governed by the "state's arbitration statute." (*See* Doc. 9-1 at 8 and n. 3).  Under these circumstances, Defendants contend Georgia's Arbitration Code applies to the extent it does not conflict with federal law.  As set forth above, Georgia's appellate courts have repeatedly applied principles derived from *MS Dealer Services Corp.* to require signatories to arbitration agreements to arbitrate disputes with non-signatories. *See, e.g.*, *Price v. Ernst & Young, LLP*, 274 Ga. App. at 175-76.

As was true with respect to the Wallace and Black agreements, the undersigned finds that Plaintiff Jun's objection to the motion to compel arbitration on the grounds that her employer was not a party to the arbitration agreement lacks merit. Defendants, the Rick Case entities and Mr. Evans, have standing to enforce the arbitration provision in the arbitration agreements. Having reached this conclusion, Plaintiffs' other grounds for opposing Defendants' motion are due to be considered.

## III.   Plaintiffs' Other Arguments Do Not Justify Denying The Motion To Compel Arbitration.

Plaintiffs raise several other arguments in an attempt to avoid arbitration.

### A.   The Lack Of Agreement Concerning Which Party Pays For Arbitration Does Not Render The Agreements Void.

Plaintiffs contend the Black and Wallace Agreements are unenforceable because the agreements do not spell out which party must pay for the costs of arbitration. Relying on cases primarily from the commercial context, Plaintiffs contend that the lack of agreement on this issue means the agreement is missing an essential term and therefore cannot be enforced. As Defendants point out, however, the United States Supreme Court has rejected the argument that an agreement to arbitrate is unenforceable if it does not spell out how the costs of arbitration will be handled. *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531

U.S. 79, 91 (2000) ("arbitration agreement's silence on the subject [of costs] . . . is plainly insufficient to render it unenforceable").

### B. The Fact An EEOC Charge Is Excluded From The Arbitration Agreement Does Not Mean A Subsequent Lawsuit Is Not Subject To The Arbitration Provision.

Plaintiffs' next contention is that the Black and Wallace agreements do not apply to claims filed with the EEOC. In particular, the agreements exclude "charges of discrimination filed and processed before the EEOC." (*See* Docs. 9-2, Exs. A and C.) Notably, Plaintiffs cite no cases where courts have found that similar language would justify the denial of a motion to compel arbitration.

To the contrary, Defendants have identified numerous cases where courts have interpreted similar language to mean that the "charge" of discrimination may be processed by the EEOC, but the subsequent lawsuit is subject to the arbitration agreement. *See, e.g., Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 947 (8th Cir. 2001). This argument does not justify denial of Defendants' motion.

### C. The Agreements Are Not Unconscionable.

Plaintiffs raise a number of arguments in an attempt to show that the arguments are unconscionable, and therefore not enforceable. Yet Plaintiffs do not bring to this Court's attention a single case from Georgia or within the Eleventh Circuit where a court found an agreement to arbitrate unconscionable for the reasons advanced here.

1.      The Agreements Are Not Procedurally Unconscionable.

First, Plaintiffs contend that unequal bargaining power of the employer and employee justifies finding the agreements procedurally unconscionable. (*See* Doc. 11 at 12). This argument is not sufficient to render an agreement to arbitrate unconscionable in the employment context. *See Caley*, 428 F.3d at 1377 (rejecting this argument and noting "Georgia courts have enforced standard-form arbitration agreements in employment relationships").

And, again without citing authority, Plaintiffs suggest the agreements are not mutually enforceable, due to the fact the employer did not sign the agreement. Where the Federal Arbitration Act only requires that an agreement to arbitrate be "in writing" as opposed to "signed," that argument fails. *See Caley*, 428 F.3d at 1368 ("while the FAA requires that the arbitration agreement be in writing, it does not require that it be signed by the parties"); *see also* O.C.G.A. § 9-9-3 (requiring "written agreement"); *Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 335, 685 S.E.2d 304, 307 (2009) ("[b]ecause our state arbitration code closely tracks federal arbitration law, we look to federal cases for guidance in construing our own statutes").

2.      The Agreements Are Not Substantively Unconscionable.

Plaintiffs make two arguments to support their contention that the agreements are substantively unconscionable. First, Plaintiffs contend that because

16

the agreements do not provide for attorneys' fees for the prevailing party, it would be unconscionable to enforce the agreements.  Plaintiffs' argument misses the point because the arbitrator would be authorized to award any relief provided by Title VII, including attorneys fees.  Since the agreements do not purport to strip that right away from Plaintiffs, the mere silence on this issue does not render the agreements unconscionable.

Plaintiffs' other argument is that the rules of the American Arbitration Association require prohibitive fees that make the agreements unconscionable.  As has been true with each of the other issues addressed here, Plaintiffs boldly make this claim without citing a single case finding similar fees sufficient to justify a finding of unconscionability.  Not only is this showing insufficient from a legal standpoint, it appears the Plaintiffs' contention that the fees could be as much as $10,000 is factually incorrect.  According to AAA's rules, employment cases are governed by a different fee schedule, and the fees for an employee to file for arbitration are "capped in the amount of $200."  (*See* AAA Employment Arbitration Rules and Mediation Procedures, Doc. 13, Ex. 3 at p. 24).  Under these circumstances, Plaintiffs' challenges to the fees which may be incurred to file an arbitration proceeding are not sufficient to justify the denial of Defendants' motion.

**IV.     Dismissal Is Warranted.**

Where, as here, compelling arbitration will leave no claims pending in the district court, it has been held appropriate to dismiss the case. *See Dale v. Comcast Corp.*, 453 F. Supp. 2d 1367, 1368 (N.D. Ga. 2006), *rev'd on other grounds*, 498 F.3d 1216.  Given that all Plaintiffs' claims are subject to arbitration, dismissal is appropriate.

## CONCLUSION

Defendant's motion for oral argument (Doc. 21) is **DENIED**.  For the reasons stated above, it is **RECOMMENDED** that Defendants' motion to compel arbitration (Doc. 9) be **GRANTED and this case be DISMISSED.**

The Clerk is **DIRECTED** to terminated the reference.

**IT IS SO ORDERED, REPORTED and RECOMMENDED** this 3rd day of October, 2013.

                                               /s/  *J. CLAY FULLER*
                                               J. CLAY FULLER
                                               United States Magistrate Judge